UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN HAZLETT,

Plaintiff,

- against -

GUTMAN, MINTZ, BAKER & SONNENFELDT, LLP, 101 QUINCY LCC, AND SMART MANAGEMENT NYC INC.,

Defendants.

**25 Civ. 1558 (GS)**

**OPINION AND ORDER**

**GARY STEIN, United States Magistrate Judge:**

In this action, Plaintiff John Hazlett ("Plaintiff" or "Hazlett") asserts claims against Defendant Gutman, Mintz, Baker & Sonnenfeldt, LLP ("Gutman" or "Defendant"), a law firm, for violations of the Fair Debt Collections Practices Act ("FDCPA") and New York General Business Law ("GBL") § 349 based on Gutman's filing and prosecution of a lawsuit against him for unpaid rent. (Dkt. No. 9). Defendant has moved to dismiss the claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 16). For the reasons set forth below, Defendant's motion is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

### A. Plaintiff's Allegations

The following facts, drawn principally from Plaintiff's amended complaint at Docket Number 9 ("Complaint" or "Compl."), are taken as true for purposes of this motion to dismiss. *See Horn v. Stephenson*, 11 F.4th 163, 166 (2d Cir. 2021).

In or about December 2017, Hazlett moved into an apartment located at 101 Quincy Street in Brooklyn, New York (the "Apartment"). (Compl. ¶ 13). The Apartment, at that time, was owned by 101 Quincy LLC ("101 Quincy") and managed by All Year Management ("All Year"). (*Id.* ¶¶ 10, 13, 18). Upon or soon before moving into the Apartment, Hazlett paid a security deposit of approximately $800 to 101 Quincy or All Year, and thereafter made rental payments for the Apartment to the same entities. (*Id.* ¶ 13).

In or about September 2018, Hazlett alleges that 101 Quincy was served with a summons and commissioner's order from the New York City Department of Buildings ("DOB") asserting that the building at 101 Quincy Street contained illegal cellar apartments that violated building and construction codes. (*Id.* ¶ 14). Hazlett himself received a copy of the DOB order in or about October 2018. (*Id.* ¶ 15).

Upon receipt of the DOB order, Hazlett became concerned that 101 Quincy had tricked him into paying for an apartment that should have never been rented out. (*Id.*). Based on that concern, Hazlett stopped paying rent and began looking for another apartment. (*Id.*). On March 18, 2019, a hearing was held on the DOB order and, at that hearing, it was determined that all units at the 101 Quincy Street address amounted to a "class 1 immediately hazardous violation" that posed a "severe threat [to] safety, property and the public interest." (*Id.* ¶¶ 3, 16; Dkt. No. 30 Ex. B at 19–20). Hazlett did not pay any rent from October 2018 through April 2019, when he moved out of the Apartment. (Compl. ¶¶ 15, 17).

In or about December 2019, after he was living at his new unit, Hazlett contacted All Year and requested return of his $800 security deposit. (*Id.* ¶ 18). Neither All Year nor 101 Quincy returned the security deposit to Hazlett. (*Id.*).

In November 2022, Smart Management texted Hazlett and requested payment of $2,970.00 for unpaid rent. (*Id.* ¶ 34). All Year subsequently transferred operations of the buildings in its portfolio to Smart Management NY Inc. ("Smart Management"), which now manages all units owned by 101 Quincy. (*Id.* ¶¶ 11, 20). Hazlett later corresponded with Smart Management, explaining that he moved out after the unit was deemed illegal, alleging that he owed no rental arrears, and requesting return of his security deposit. (*Id.* ¶ 35). Smart Management told Hazlett that the Apartment was "a legal apartment" and that it could not return his deposit. (*Id.* ¶ 36).

In or about December 2023, Gutman commenced a lawsuit against Hazlett, on behalf of 101 Quincy, in Civil Court in Kings County. (*Id.* ¶¶ 22, 37; *see also* Dkt. No. 17 Ex. A). In that action, Gutman asserted through a verified complaint it signed that Hazlett had defaulted on his rental obligations for the Apartment and owed 101 Quincy $2,411.60 for rental arrears and $625 in attorneys' fees. (Compl. ¶¶ 23–25). Attached to the complaint was an affidavit from 101 Quincy agent David Friedman attesting that Hazlett owed $2,411.60 in arrears. (Dkt. No. 17 Ex. A at 5).

In February 2024, after being served with the lawsuit, Plaintiff sent a letter to Gutman stating that he owed no rental arrears for the Apartment since it was an

illegally-converted unit, providing a copy of the DOB order, and requesting that Gutman discontinue the suit. (*Id.* ¶¶ 22, 26; Dkt. No. 30 Ex. B at 5, 8–9). Gutman did not discontinue the suit. On March 1, 2024, Hazlett provided his answer with counterclaims in the state court action. (Dkt. No. 17 Ex. B).

In March 2024, Hazlett sent another letter to Gutman. (Compl. ¶ 27; Dkt. No. 30 Ex. B at 11). That letter reiterated Hazlett's position that he owed no rental arrears on the Apartment, and this time attached a copy of the administrative decision finding that 101 Quincy had committed a "class 1 immediately hazardous violation" through its rental of the Apartment, which constituted a "severe threat [to] safety, property, and the public interest." (Compl. ¶ 27). Hazlett again requested that Gutman discontinue the suit, which Gutman again did not do. (*Id.*).

On July 29, 2024, Civil Court Judge Delsia G. Marshall issued a discovery order in the state case. (Dkt. No. 30 Ex. A). Through that order, the parties were directed to mail to one another "documents, photographs and/or other evidence in support of their positions." (*Id.*).

Pursuant to that order, Gutman sent Hazlett discovery materials on September 4, 2024. (Compl. ¶¶ 23–24; Dkt. No. 30 Ex. B). These materials included a lease agreement created on August 26, 2017, with a lease term running from August 2017 to July 2018, which was outside of Plaintiff's tenancy. (Compl. ¶ 23). Gutman also produced a tenant ledger, which Hazlett contends did not add up to or otherwise justify the alleged amount sought, and a June 28, 2023 collection

letter which Plaintiff claims he never received as it was sent to an incorrect address. (*Id.* ¶ 24; Dkt. No. 30 Ex. B at 16–17).

In October 2024, Hazlett sent Gutman a third letter requesting discontinuance of the suit. (Compl. ¶ 28). Hazlett again attached a copy of the DOB order and administrative decision, as well as his communications with All Year and Smart Management concerning the violations. (*Id.*; *see also id.* ¶¶ 34–36). Gutman, again, did not discontinue the suit. (*Id.* ¶ 28).

Through the course of the lawsuit, the parties participated in four pretrial conferences with the court. (*Id.* ¶ 29; Dkt. No. 30 Ex. C). Those conferences occurred on March 15, 2024, July 29, 2024, October 22, 2024, and January 13, 2025. (Dkt. No. 30 Ex. C). Before or during each of those conferences, Hazlett alleges that he repeated his contention to Gutman that he owed no rental arrears for the Apartment. (Compl. ¶ 29). More than a year after filing it, Gutman discontinued the state court action with prejudice on January 13, 2025. (*Id.*; Dkt. No. 17 Ex. C).

### B. Procedural History

Hazlett filed this action initially in New York Supreme Court on December 22, 2024, prior to the discontinuance of Gutman's lawsuit against him. (Dkt. No. 1 ¶ 1 & Ex. A). Hazlett's original complaint asserted causes of action against Gutman for violations of the FDCPA and GBL § 349. (Dkt. No. 1 Ex. A ¶¶ 2, 20—35). On February 24, 2025, Gutman removed the action to this court. (Dkt. No. 1). The parties agreed that service had been deemed effectuated as of that date, and Gutman agreed not to challenge service of process. (Dkt. No. 6).

On April 9, 2025, Plaintiff filed his amended complaint with the consent of Gutman. (Dkt. No. 9). The amended complaint added 101 Quincy and Smart Management as Defendants and alleged causes of action against them for intentional infliction of emotional distress and unjust enrichment, as well as for violations of GBL § 349. (*Id.* ¶¶ 52–62).[1] Plaintiff's causes of action against Gutman remained unchanged. (*See id.* ¶¶ 41–51).

On May 14, 2025, Gutman filed its motion to dismiss. (Dkt. No. 16). Accompanying that motion were a declaration from its attorney Kenneth Novikoff (Dkt. No. 17 ("Novikoff Declaration")), and a memorandum of law in support (Dkt. No. 18 ("Def. Br.")).

On July 23, 2025, Hazlett filed his opposition to Gutman's motion (Dkt. No. 29 ("Pl. Br.")), accompanied by a declaration from his attorney Hashim Rahman (Dkt. No. 30 "Rahman Declaration")), and a declaration of counsel as to the length of the opposition (Dkt. No. 31). Gutman filed its reply brief on August 7, 2025. (Dkt. No. 34 ("Reply")).[2]

---

[1] Plaintiff later settled his claims with 101 Quincy and Smart Management. (*See* Dkt. Nos. 55, 64, 66). Accordingly, Gutman is the only remaining Defendant in this action.

[2] Attached to the Novikoff and Rahman Declarations are several documents the parties have asked the Court to consider on the motion to dismiss. Those documents include the DOB order and hearing decision; the summons, complaint, discovery order, and stipulation of dismissal in the Civil Court action; the tenant ledger produced by Gutman in that action; and letters sent from Hazlett to Gutman. Neither party has objected to the Court's consideration of these materials. Each document appears to be incorporated by reference in the Complaint (*see* Compl. ¶¶ 3, 14–16, 22–29) and/or a court record of which judicial notice may be taken. *See, e.g.*, *Spanos v. City of New York*, No. 15 Civ. 6422 (LTS), 2016 WL 3448624, at *1 n.1 (S.D.N.Y. June 20, 2016) (considering on motion to dismiss DOB documents that were incorporated by reference in the complaint), *aff'd*, 672 F. App'x 124 (2d Cir. 2017); *Whyte v. Bayview Loan Servicing, LLC*, No. 21 Civ. 3301 (PKC), 2022 WL 4484664, at *1 & n.1 (E.D.N.Y. Sept. 27, 2022) (taking judicial notice of underlying state court documents in considering motion to dismiss in FDCPA action).

On August 14, 2025, Hazlett filed a letter motion seeking permission from the Honorable Jennifer H. Rearden to file a sur-reply. (Dkt. No. 41). Over Gutman's opposition (Dkt. No. 42), Judge Rearden granted that request "only to the extent that it responds to arguments made for the first time in Defendant Gutman's reply" on March 26, 2026. (Dkt. No. 50). However, no such sur-reply was ever submitted, and the parties' later April 20, 2026 joint status letter states that the motion to dismiss is "fully briefed." (Dkt. No. 55 ¶ 6).

In the April 20, 2026 status letter, the parties agreed to participate in certain discovery while the motion to dismiss was under consideration. (Dkt. No. 55 ¶ 8 and at 5–6). The parties held an initial pretrial conference with Judge Rearden on April 22, 2026. (*See* Minute Entry at April 22, 2026). Shortly thereafter, the parties consented to the jurisdiction of the undersigned for all proceedings in this action (Dkt. No. 57), which Judge Rearden promptly entered (Dkt. No. 59).

The undersigned held a status conference on May 12, 2026 (Minute Entry at May 12, 2026), and a Case Management Plan and Scheduling Order was entered soon after (Dkt. No. 63). After unsuccessful private mediation (Dkt. No. 68), the parties have continued discovery efforts (Dkt. Nos. 70).

## LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). However, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (citation omitted). "[T]he court's task is to assess the legal feasibility of the

complaint; it is not to assess the weight of the evidence that might be offered on either side[.]" *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

Defendant's motion seeks dismissal of both of Plaintiff's causes of action in full. The Court begins its analysis with Hazlett's FDCPA claim, and then addresses his GBL § 349 claim.

### A. FDCPA Claim

"[T]he FDCPA generally forbids [debt] collectors from engaging in unfair, deceptive, or harassing behavior" and "'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection[.]'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)). Attorneys who initiate litigation on behalf of creditors to collect consumer debts, including for nonpayment of rent, are "debt collectors" within the meaning of the statute. *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14 Civ. 1868 (ARR), 2014 WL 4843947, at *5 (E.D.N.Y. Sept. 26, 2014); *see Goldman v. Cohen*, 445 F.3d 152, 154–55 (2d Cir. 2006), *superseded on other grounds by* 15 U.S.C. § 1692g(d).

"The provisions of the FDCPA set forth a series of limitations on the content and manner of a debt collector's interactions with a consumer." *Wilkins v. Specialized Loan Servicing, LLC*, 623 F. Supp. 3d 264, 270 (S.D.N.Y. 2022) (citing 15 U.S.C. §§ 1692b–1692j). Hazlett's FDCPA cause of action charges Gutman with

violating four of those provisions: Sections 1692d, 1692e, 1692f, and 1692g. (Compl. ¶¶ 43–51).

As explained below, the Court concludes that Hazlett has failed to state a claim for relief under two of the four cited provisions—Sections 1692d and 1692g—but has stated a valid claim for violations of the other two provisions, Sections 1692f and 1692e.

**1. Section 1692d**

Plaintiff's amended complaint first alleges a violation of Section 1692d of the FDCPA. (Compl. ¶ 43). This alleged violation requires dismissal.

Section 1692d prohibits conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The provision includes a non-exhaustive list of prohibited conduct, including, *inter alia*, the use or threat of violence, the use of obscene or profane language, and repeated and harassing phone calls. *See id.* § 1692d(1)–(6). The statute's examples of qualifying acts all involve "oppressive and outrageous conduct," *Rojas v. Forster & Garbus LLP*, No. 13 Civ. 2825 (DLI), 2014 WL 3810124, at *3 (E.D.N.Y. July 31, 2014) (quotations omitted)—that is, "extrajudicial techniques of harassment designed to humiliate or annoy a debtor," *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013).

Hazlett alleges that Gutman violated § 1692d in two ways. First, Hazlett argues that Gutman violated the statute by commencing a meritless debt collection action. (Compl. ¶ 43; *see* Pl. Br. at 16). Second, Hazlett argues that Gutman

violated the statute by "persist[ing] in the action for more than a year despite knowing that the debt was invalid." (Compl. ¶ 43; *see* Pl. Br. at 16). Neither allegation adequately pleads harassing, oppressive, or abusive conduct in violation of § 1692d.

First, courts in this Circuit have uniformly held that the filing of a single lawsuit, even if meritless, cannot establish a violation of § 1692d. *See Finch v. Slochowsky & Slochowsky, LLP*, No. 19 Civ. 6273 (RPK), 2020 WL 5848616, at *3 (E.D.N.Y. Sept. 30, 2020) ("The filing of a lawsuit to collect a debt—even if the lawsuit is meritless—is not properly understood as 'conduct the natural consequence of which is to harass, oppress, or abuse any person' under this provision." (quoting 15 U.S.C. § 1692d)); *Wimberly v. Stern*, No. 22 Civ. 7581 (VSB), 2023 WL 6466465, at *5 (S.D.N.Y. Oct. 4, 2023) (finding that "[f]iling a lawsuit to collect a debt—or here a counterclaim—even if that suit is without merit" is insufficient to state a claim under § 1692d); *see also Ahmad v. Selip & Stylianou, LLP*, No. 25 Civ. 4250 (LLS), 2026 WL 1175031, at *2 (S.D.N.Y. Apr. 28, 2026) (dismissing § 1692d claim *sua sponte* as "[t]he filing of a lawsuit to collect a debt does not represent the 'extrajudicial techniques of harassment designed to humiliate or annoy a debtor' that Section 1692d was designed to protect against" (quoting *Okyere*, 961 F. Supp. 2d at 520)); *Lawtone-Bowles v. Baum*, No. 25 Civ. 1218 (LLS), 2025 WL 2295253, at *4 (S.D.N.Y. Aug. 6, 2025) (same).

Generally, "'situations involving improper litigation conduct have been held to fall outside section 1692d.'" *Lewis v. Legal Servicing, LLC*, No. 19 Civ. 8085

(PAE) (OTW), 2022 WL 2531817, at *11–12 (S.D.N.Y. Mar. 15, 2022) (dismissing § 1692d claim even though plaintiff alleged the filing of three improper debt collection lawsuits against him) (quoting *Okyere*, 961 F. Supp. 2d at 520–21), *R&R adopted sub nom. Lewis v. Steward*, 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022), *aff'd sub nom. Lewis v. Crandall*, No. 24-684-cv, 2024 WL 5154017 (2d Cir. Dec. 18, 2024). Courts that have recognized a § 1692d claim in this context have required successive filings against the plaintiff under circumstances suggesting harassing or abusive behavior. *See Curto v. Palisades Collection, LLC*, No. 07 Civ. 529(S) (WMS), 2011 WL 5196708, at *6 (W.D.N.Y. Oct. 31, 2011) (finding that "successive filings may be in violation of § 1692d, if their natural consequence is to harass, oppress, or abuse [p]laintiff in connection with the collection of the debt"); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 112–13 (E.D.N.Y. 2020) (recognizing that "the initiation of two successive collection actions [could] have the natural consequence of harassing or abusing," but distinguishing *Curto* and finding that the filing of two collection actions against plaintiff "d[id] not reach th[e] level of harassment" required by § 1692d).

Hazlett does not allege successive litigation against him filed by Gutman, nor does he allege any additional harassing or abusive behavior. Nor does he cite to any authority recognizing a § 1692d violation based on the filing of a single allegedly baseless lawsuit. Accordingly, even if Gutman knew the underlying action was meritless when filed, that does not make out a violation of § 1692d.

Second, Hazlett fares no better with his allegations that Gutman "forced [him] to appear at four conferences and endure more than a year of litigation," despite being in possession of documents establishing Hazlett's complete legal defense. (Pl. Br. at 16). "Section 1692d focuses on harassing, oppressive and abusive *communications* with a debtor or to the public." *Scott v. Greenberg*, No. 15 Civ. 5527 (MKB), 2017 WL 1214441, at *10 (E.D.N.Y. Mar. 31, 2017) (emphasis in original). And courts upholding a § 1692d violation on the basis of actions taken during litigation have focused on communications made during that litigation. *See Castillo v. Balsamo Rosenblatt & Cohen, PC*, 33 Misc. 3d 700, 930 N.Y.S.2d 789, 795–76 (Civ. Ct. Kings Cnty. June 30, 2011) (refusing to dismiss § 1692d claim where plaintiff alleged that "when the parties appeared in housing court, counsel for the defendant threatened [plaintiff] by telling him he will be subject to sanctions and attorney[s'] fees if he does not withdraw the instant action").

Hazlett points to no harassing, oppressive, or abusive communications made by Gutman during the state court litigation. Rather, he contends that the mere continuation of the action violated § 1692d. But courts have found instances of conduct delaying or prolonging litigation, absent wrongful communications, insufficient to allege a violation of the provision. *See Scott*, 2017 WL 1214441, at *10 ("[T]he thrust of [p]laintiff's Amended Complaint—that [defendant] failed to communicate sufficiently with [p]laintiff regarding the underlying collection proceeding—is the opposite of the conduct prohibited under section 1692d."); *Brake*, 504 F. Supp. 3d at 108, 112–13 (dismissing claim where law firm refused to dismiss

and prolonged second collection suit based on outdated documents, despite evidence of payment, as "the claim here, as alleged, clearly does not demonstrate the tone of intimidation implied by § 1692d"); *Popson v. Galloway*, No. 10-CV-77E, 2010 WL 2985945, at *6 (W.D. Pa. July 27, 2010) (dismissing § 1692d claim that debt collector "proceeded with the suit without documentation detailing the purchases, payments, interest, and late charges, making it impossible for [p]laintiff to determine whether or not he owed the alleged debt and if it was correctly calculated"); *Rojas*, 2014 WL 3810124, at *3 (dismissing claim as the conduct prohibited under § 1692d was a "far cry from the accusation here that [d]efendant rejected a tendered payment in violation of a settlement agreement negotiated between counsel [ending lawsuit] and then demanded an increased payment to resolve an outstanding debt"). Gutman's mere prolonging of the underlying action, even if known to be baseless, does not encompass the kind of conduct prohibited under § 1692d.

Accordingly, Plaintiff's claim for violation of § 1692d must be dismissed.

**2. Section 1692g**

Plaintiff's allegations under § 1692g also require dismissal.

Section 1692g requires that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," the debt collector must "send the consumer a written notice containing" several pieces of information, including the consumer's right to dispute the debt, unless this information "is contained in the initial communication" (or the debt has been paid).

15 U.S.C. § 1692g(a)(1)–(5). Though the statute "does not offer a definition of 'initial communication,'" *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017), it specifies that formal pleadings in a civil action are not considered an "initial communication" under § 1692g(a), 15 U.S.C. § 1692g(d).

Hazlett's Complaint alleges that Gutman violated § 1692g by "failing to send the Plaintiff a written notice containing a statement informing [Plaintiff] of his right to dispute the validity of the debt" and "continuing collection after the Plaintiff disputed the debt." (Compl. ¶ 51). Those allegations do not identify an "initial communication" that could form the basis for a § 1692g claim. Gutman's moving brief, based on an assumption that the "initial communication" underlying this claim was the complaint Gutman filed against Hazlett in the debt collection action, argued that Hazlett's claim should be dismissed because § 1692g expressly provides that legal pleadings are not "initial communications." (Def. Br. at 19–20).

In his opposition brief, Hazlett did not dispute that liability could not attach based on Gutman's complaint in the debt collection action and still did not identify any document that he contended would constitute an "initial communication" for purposes of § 1692g. (*See* Pl. Br. at 16). He also acknowledged that "there was no document apprising him of his rights before he received communications from Gutman during the lawsuit." (*Id.*). Instead, he argued vaguely that "[i]f this case proceeds, facts regarding communications will be elucidated in discovery." (*Id.*). In his letter motion seeking to file a sur-reply, Plaintiff further noted that "non-pleading communications" he received from Gutman during the lawsuit are

"described in the Amended Complaint," pointing to Paragraph 24 in particular. (Dkt. No. 41 at 2).

However, the only document identified in Paragraph 24 that Hazlett received during the state court litigation (other than the complaint itself) is the "ledger" of rent payments owed that was produced by Gutman pursuant to the state court's discovery order. (Compl. ¶ 24; Rahman Declaration Ex. B at 16–17).[3] Plainly, neither the ledger produced by Gutman, nor the September 4, 2024 cover letter accompanying its production, could plausibly be regarded as a § 1692g "initial communication." The statute contemplates that the information to be provided to the consumer will be contained either in the "initial communication" itself or in a "written notice" sent within five days thereafter. *See* 15 U.S.C. § 1692g(a). It would be absurd to suggest that Congress intended that the debt collector would set forth this information in a document production, or that a document production would serve as a trigger point for the information to be provided five days later.

Indeed, it is implausible to suggest that any document communicated to the defendant-debtor in the collection action could qualify as the requisite "initial communication" for purposes of the statute. Hazlett cites no authority for that novel proposition, nor has the Court found any. To the contrary, courts have made

[3] Paragraph 24 also references the June 28, 2023 collection letter sent by Gutman to Hazlett prior to the lawsuit. But that same paragraph alleges that Hazlett "never received [this letter] as it was purportedly sent to an incorrect address." (Compl. ¶ 24). As Hazlett alleges he did not receive the letter, it cannot constitute the "initial communication" for purposes of § 1692g. *See Saoulis v. Credit Control Servs., Inc.*, No. 20 Civ. 735 (BMC), 2020 WL 2836822, at *2 (E.D.N.Y. June 1, 2020) ("'If [p]laintiff did not receive the letter, then there is no evidence that [d]efendant engaged in any "initial communication" with [p]laintiff that would trigger its duties under § 1692g(a).'" (quoting *Karimian v. CMRE Fin. Servs. Inc.*, No. 12-cv-8359, 2013 WL 12114825, at *5 (C.D. Cal. May 14, 2013))).

clear that litigation communications, including, but not limited to, the initial complaint, cannot serve this purpose. *See Valle v. Bendett & McHugh, P.C.*, No. 3:14-CV-1796 (SRU), 2015 WL 5797023, at *9 (D. Conn. Sept. 30, 2015) (dismissing § 1692g claim for failure to identify an initial communication as "[plaintiff] does not allege that [defendant] communicated with her in any way prior to filing the suit"); *Capoccia v. Curt P. Rehberg & Assocs.*, No. 07 C 50011, 2007 WL 9818008, at *2 (N.D. Ill. Oct. 19, 2007) ("If, as discussed in this court's July 19 order, legal pleadings are not treated as an 'initial communication' for purposes of § 1692g(a), then certainly any communications that occur within the actual legal proceeding likewise would not qualify. To hold otherwise would be absurd, as a formal legal proceeding is not the type of abusive debt collection practice that the FDCPA attempts to prevent.").

Having failed to identify any "initial communication" that would trigger Gutman's obligations to provide the statutorily required information, Hazlett has not adequately alleged a violation of § 1692g.

**3. Section 1692f**

However, Plaintiff's two other claimed FDCPA violations stand on more solid footing.

Section 1692f of the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This provision also contains non-exhaustive examples of prohibited conduct. *Id.* § 1692f(1)–(8). The Second Circuit has held that "unfair or unconscionable means"

refers to practices that are "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (internal quotation marks and citations omitted). In *Arias*, the Second Circuit held that a "debt collector engages in unfair or unconscionable in violation of section 1692f when . . . it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." *Id.* at 138; *see Villalba v. Houslanger & Assocs., PLLC*, No. 19 Civ. 4270 (PKC), 2022 WL 900538, at *6 (E.D.N.Y. Mar. 28, 2022).

Gutman argues that Hazlett's § 1692f claim requires dismissal as "the filing of a single action is insufficient to maintain a claim under § 1692f." (Def. Br. at 19; *see also* Reply at 6). But this reads Hazlett's allegations too narrowly. Hazlett specifically alleges that Gutman violated § 1692f not only by "verify[ing] a pleading which contained facts that did not match documents in its possession," but also by "persist[ing] in a legal action over a debt that it knew was invalid." (Compl. ¶ 49). In particular, Hazlett alleges that after the lawsuit was filed, he provided Gutman with material in February and March 2024 sufficient to prove that the lawsuit was baseless, and that Gutman nonetheless continued the action for almost another full year and forced Hazlett to, *inter alia*, attend four pretrial conferences. (*Id.* ¶¶ 26–29, 31, 49–50; *see also* Rahman Declaration Ex. C).

Hazlett's allegations mirror those where courts have allowed consumers to proceed under § 1692f. As in *Arias*, Hazlett specifically alleges, and provides factual detail to support, that Gutman "unduly prolong[ed] legal proceedings" and

"require[d] [Hazlett] to appear at" four unnecessary hearings. *Arias*, 875 F.3d at 138. Courts in this Circuit have routinely allowed similar allegations to survive a motion to dismiss. *See, e.g.*, *Iacovo v. Magguilli*, No. 24 Civ. 4372 (NCM), 2025 WL 1135471, at *10 (E.D.N.Y. Apr. 17, 2025) (denying dismissal of § 1692f claim where plaintiff alleged that "defendants had documentary proof that [plaintiff] did not owe the debt before they brought suit," "refused to dismiss" the action after plaintiff's "repeated attempts to apprise them that she did not owe the debt," and only offered to discontinue the action if plaintiff gave a settlement offer); *Villalba*, 2022 WL 900538, at *6 (denying motion to dismiss § 1692f claim where defendants "compelled [plaintiff] to litigate against a default judgment they knew or should have known was baseless").

In any event, the Second Circuit has squarely held that "by pleading that defendant attempted to collect an amount not authorized by agreement or permitted by law, the plaintiff has stated a plausible claim under § 1692f(1) without need for further allegations of unfairness or unconscionability." *Vangorden v. Second Round, L.P.*, 897 F.3d 433, 438 (2d Cir. 2018) (vacating dismissal of § 1692f claim where plaintiff alleged that defendant sent a letter claiming an outstanding debt despite plaintiff having paid the debt years prior). This holding is grounded in the first of the statute's non-exhaustive examples of conduct manifesting "unfair or unconscionable" means: "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Courts have therefore also sustained § 1692f claims based on the

attempted collection of an invalid debt. *See, e.g.*, *Remler v. Cona Elder L., PLLC*, No. 21 Civ. 5176 (ARR), 2022 WL 4586243, at *5 (E.D.N.Y. Sept. 29, 2022) ("Should [plaintiff] prove that [defendant] overstated the amount due as a result of its own negligence, such an attempt to collect an amount not authorized by the underlying agreement would present a violation of § 1692f."); *Escobar v. Midland Credit Mgmt.*, No. 3:18-cv-819 (MOPS), 2019 WL 3751486, at *7 (D. Conn. Aug. 8, 2019) (upholding § 1692f claim because defendant's alleged conduct "may constitute the collection of an invalid debt or the collection of an amount not permitted by law," and noting that "[n]o further allegations of unfair and unconscionable conduct are needed" (internal quotations and citations omitted)); *Raytman v. Jeffrey G. Lerman, P.C.*, No. 17 Civ. 9681 (KPF), 2018 WL 5113952, at *6 (S.D.N.Y. Oct. 19, 2018) (finding that plaintiff stated claim under § 1692f by "plausibly plead[ing] that [d]efendant attempted to collect an invalid debt" and "[did] not need to plead further allegations of unfairness or unconscionability").

Accordingly, Hazlett's claim under § 1692f should not be dismissed.

**4. Section 1692e**

Pursuant to Section 1692e, debt collectors are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This provision also sets out a non-exhaustive list of prohibited conduct, *see* 15 U.S.C. § 1692e(1)–(16), "which includes the threat to take any action that cannot legally be taken or that is not intended to be taken and the false representation of 'the character, amount, or legal status of

any debt,'" *Remler*, 2022 WL 4586243, at *4 (quoting 15 U.S.C. § 1692e(2)(A)). Hazlett's Complaint alleges that Gutman's conduct in commencing and prosecuting a debt collection action that falsely alleged he owed rent on the illegal Apartment satisfies several of the § 1692e examples. (Compl. ¶¶ 44–47).

"[A]n attempt to collect a debt from a non-debtor constitutes a false representation as to the character or status of the debt in violation of 1692e." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (cleaned up) (collecting cases). "This includes, for example, where a debt collector commences and prosecutes a debt collection lawsuit without a legal basis to seek payment of a debt 'that plaintiff does not actually owe.'" *Iacovo*, 2025 WL 1135471, at *9 (quoting *Finch*, 2020 WL 5848616, at *3). "In other words, if plaintiff 'does not in fact owe the debt, she has a viable § 1692e claim for the misstatement of a debt obligation.'" *Id.* (quoting *Pacheco v. Afni, Inc.*, No. 17 Civ. 6751 (RMM), 2019 WL 13276876, at *6 (E.D.N.Y. Mar. 20, 2019)). Section 1692e proscribes "even a partial misstatement of a consumer's debt obligation." *Vangorden*, 897 F.3d at 442 (discussing plaintiff's claims under §§ 1692e and 1692f).

Gutman argues that Hazlett's claim should be dismissed because Hazlett's allegations of a false representation are "conclusory and not plausible on their face." (Def. Br. at 20). In support, Gutman argues that "[a]llegations that a plaintiff does not owe a debt do not, without more, plead sufficient facts to support a claim under the FDCPA." (*Id.*). Here again, however, Gutman reads Plaintiff's allegations too narrowly.

Plaintiff does not merely plead that he did not owe the underlying debt. Rather, he alleges that Gutman knew that its lawsuit was legally unwinnable and that Gutman nonetheless filed and persisted in the action. (Compl. ¶¶ 3, 31, 44–47). Moreover, Hazlett alleges that he communicated with Gutman on multiple occasions during the litigation, explaining that he did not owe the subject debt and providing materials in support, and yet Gutman refused to dismiss the case for more than a year. (*Id.* ¶¶ 26–29, 44).

These allegations are neither conclusory nor implausible when accepted as true and viewed in the light most favorable to Plaintiff, as they must be on this motion. The Complaint supports them with specifically pled facts about the DOB proceedings establishing that the Apartment was illegal, Hazlett's pre-suit communications with Gutman's client explaining that this was why he had stopped paying rent, and Hazlett's repeated post-suit communications to the same effect with Gutman in February, March, and October 2024 and at several court conferences during 2024. (*Id.* ¶¶ 14–16, 26–29, 35).

Hazlett's allegations echo those upheld in other cases in this Circuit. For example, in *Iacovo* the plaintiff "allege[d] that she did not in fact owe the debt" and "that defendants should have known she did not owe the debt." *Iacovo*, 2025 WL 1135471, at *9. Iacovo alleged that the defendant possessed the relevant materials showing as much "when they commenced" the debt collection suit, that she "repeatedly communicated to defendants that she 'should not be a defendant' in the collection lawsuit," and that "[d]espite these warnings, defendants continued to

attempt to collect the debt from Iacovo, until eventually agreeing to discontinue the case without prejudice." *Id.* The court found those allegations "sufficient to state a claim pursuant to Section 1692e." *Id.* Other cases are to like effect. *See, e.g.*, *Brake*, 504 F. Supp. 3d at 113–14 (refusing to dismiss § 1692e claim where law firm refused to dismiss and prolonged second collection suit based on outdated documents, despite evidence of payment, as "[plaintiff's] allegations concerning [defendant's] attempt to collect an invalid debt are sufficient to plausibly state a claim to relief under both sections 1692e and 1692f"); *Aves v. Network Recovery Servs., Inc.*, No. 25 Civ. 3566 (MMG), 2026 WL 880492, at *5 (S.D.N.Y. Mar. 31, 2026) (denying motion to dismiss § 1692e claim where plaintiff alleged that defendant "sent the Collection Letter demanding payment from her even though [d]efendant knew or should have known that she was not liable for any amount owed").

Gutman argues that it did "exactly what we ask attorneys to do" in making good faith allegations "on behalf of its client" against a former tenant who had "undisputed[ly]" stopped paying rent, and then discontinuing the action "as soon as [it] determined" that Plaintiff potentially had a defense to its client's claim. (Reply at 2, 8). But this simply presents Gutman's version of the facts, which are vigorously disputed by the Complaint's well-pled allegations. Accepting those allegations as true, Plaintiff has plausibly pled that Gutman made a false representation within the meaning of § 1692e by "commenc[ing] and prosecut[ing] a

debt collection lawsuit without a legal basis to seek payment of a debt that plaintiff does not actually owe." *Iacovo*, 2025 WL 1135471, at *9 (quotation omitted).

Accordingly, Plaintiff's claim for violation of § 1692e should not be dismissed.

* * *

Gutman also advances what appears to be a policy argument as to why the FCDPA should not be deemed to cover the conduct alleged in Hazlett's Complaint. Specifically, Gutman argues that, should plaintiffs be allowed to proceed with FDCPA claims like Hazlett's, this would lead to an "absurd and counterproductive result" and would also create a "significant ethical dilemma." (Def. Br. at 7; Reply at 9). According to Gutman, rather than discontinue a debt collection lawsuit when presented with evidence from the debtor showing it to be unfounded, lawyers for creditors "will be incentivized by self-interest to persuade [their] client[s] to 'fight to the death' in the hopes of having [their] client[s] either prevail at trial or secure a more favorable settlement," in order to protect against counsel's own potential liability. (*Id.*).

Of course, such policy arguments are ultimately irrelevant where, as here, the statutory language unambiguously allows for liability if the facts as alleged are proven at trial. *See, e.g.*, *Brogan v. United States*, 522 U.S. 398, 408 (1998) ("[c]ourts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so," where "the plain language" is controlling). Even considered on its merits, however, the argument is seriously misguided and wholly unpersuasive. Its premise is that collection lawyers, once

made aware that a suit they brought is unfounded, would, to avoid any possible FDCPA liability, engage in conduct *more* clearly violative of the FDCPA, in pursuit of their own economic self-interest and in derogation of the rights of consumers and the interests of the attorneys' own clients. Putting aside that self-interest ought to impel attorneys to refrain from such behavior, the Court hopes and trusts there are not many lawyers out there so indifferent to their legal obligations and ethical responsibilities. To the extent there are, *narrowly* interpreting the FCDPA to accommodate their Machiavellian tendencies would not advance the statutory purpose or promote sound public policy. *See Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018) ("[T]he FDCPA must be construed liberally to effectuate its stated purpose[.]").

For the reasons stated, the Court concludes that Plaintiff's FDCPA claim survives as to the alleged § 1692e and § 1692f violations, but not as to the alleged § 1692d and § 1692g violations.

**B. GBL § 349 Claim**

Hazlett's cause of action for violations of GBL § 349, however, should be dismissed in full.

GBL § 349 prohibits "[d]eceptive . . . acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service." N.Y. Gen. Bus. L. § 349(a). To plead a prima facie claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quotation omitted). Gutman argues that Plaintiff fails to satisfy the first or second prongs of this standard. (Def. Br. at 11). The Court finds that Plaintiff fails to plead consumer-oriented conduct, and therefore does not decide whether he has adequately pled conduct that is materially misleading.

While "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior," plaintiffs pleading a § 349 claim "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529, 532 (1995); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) ("Private transactions not of a recurring nature or without ramifications for the general public do not fall within the purview of section 349."). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (collecting cases).

Consumer-oriented conduct can also be demonstrated through an entity's "established practice and policies." *White v. Fein, Such & Crane, LLP*, No. 15 Civ. 438 (JTC), 2015 WL 6455142, at *6 (W.D.N.Y. Oct. 26, 2015). "[A] plaintiff need not delay bringing his suit until a defendant['s] improper conduct harms other individuals as long as the conduct has the potential to affect similarly situated consumers." *Shostack v. Diller*, No. 15 Civ. 2255 (GBD) (JLC), 2015 WL 5535808, at

*8 (S.D.N.Y. Sept. 16, 2015), *R&R adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016). The requisite consumer-oriented conduct may be shown where the plaintiff alleges that the defendant's actions "were part of their ordinary course of business" and that "the same or similar actions are potentially (and quite likely) directed toward numerous other consumers on a daily basis." *Id.*

Hazlett argues that he has sufficiently pled consumer-oriented conduct in two ways. First, Hazlett contends that he has "alleged that Gutman engaged in repeated, deceptive acts on a broad group of individuals (i.e. tenants and others alleged to owe a debt)." (Pl. Br. at 7). Second, Hazlett argues that he has alleged consumer-oriented conduct as Gutman's conduct "evinces a practice and policy of filing lawsuits against consumers with no meaningful review." (*Id.* at 8). The Court examines each of Hazlett's theories in turn.

**1. Repeated Acts against a Broad Group of Consumers**

First, the Court finds that Hazlett has not adequately pled that Gutman engaged in repeated, deceptive acts directed at a broad group of individuals.

It is true that "[n]umerous courts in the Southern District of New York have held 'that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349.'" *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779 (ER), 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) (quoting *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 Civ. 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015), *order corrected on denial of*

*reconsideration*, 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016), and collecting cases). But Hazlett's non-conclusory allegations fail to meet this bar.

Hazlett alleges that, "[u]pon information and belief," Gutman "attempted to collect rental arrears from other tenants who were placed in illegal units by the landlord." (Compl. ¶ 30). Hazlett also alleges that "Gutman knew or had ample reason to know that [101 Quincy] engaged in a routine practice of suing or attempting to collect rental arrears from tenants despite the illegality of the units." (*Id.*). In support, Hazlett cites to a separate action where he alleges that "Gutman attempted to collect arrears against another tenant who indicated that the apartment was not legal." (*Id.* (citing *101 Quincy LLC v. Branch*, No. 515617/2016, NYSCEF Doc. No. 30, (N.Y. Sup. Ct. Kings Cnty. Sept. 6, 2016))). Finally, in his brief, Hazlett points to three actions in this Circuit in which Gutman was sued for FDCPA violations, purportedly showing that "Gutman has a history of deceptive acts against tenants and individuals accused of owing a debt." (Pl. Br. at 7). None of these allegations suffice.

First, Hazlett's information-and-belief allegation that Gutman has "attempted to collect rental arrears from other tenants who were placed in illegal units" is wholly conclusory and lacks sufficient "'factual detail, such as examples of other affected consumers or similar instances of misconduct' to support [Hazlett's] claim that [Gutman's] debt collection efforts were consumer oriented, and [is] therefore insufficient to support [Hazlett's] § 349 claim." *Garcia v. Kahan*, No. 25 Civ. 8489 (JGK), 2026 WL 1724309, at *2 (S.D.N.Y. June 15, 2026) (quoting *Timber*

*Hill Enters., LLC v. Alta Equip. Co.*, No. 26 Civ. 2 (AJB), 2026 WL 1346622, at *3 (N.D.N.Y. May 14, 2026)); *see also Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) ("Courts in this circuit look unfavorably upon conclusory pleadings made on information and belief, especially with regard to consumer fraud claims such as those under [ ] § 349." (internal citations omitted)). Accordingly, this allegation does not support upholding Hazlett's § 349 claim.

Second, Hazlett's allegation that Gutman "knew or had ample reason to know that [101 Quincy] engaged in a routine practice of suing or attempting to collect rental arrears from tenants despite the illegality of the units" likewise lacks sufficient support and is therefore similarly conclusory. The only example of this allegedly "routine practice" is the *Branch* case filed against another 101 Quincy tenant by Gutman. But that action was filed in 2016, years before the September 2018 DOB order that Hazlett claims established that the landlord was renting out illegal cellar apartments (*see* Compl. ¶ 14), and Gutman obtained a default judgment against the tenant in April 2018, also before the DOB order. (No. 515617/2016, NYSCEF Doc. No. 20). *Branch* therefore does not provide genuine support for Hazlett's allegation that Gutman has routinely sued 101 Quincy tenants to collect on illegal rent arrears.[4]

Third, the prior FDCPA actions filed against Gutman also fall short. In *Torres v. Gutman Mintz, Baker & Sonnenfeldt P.C.*, Gutman allegedly sued the

[4] It is true that the former tenant in *Branch* subsequently attempted to vacate the default judgment on the basis of the same allegations Hazlett makes here (No. 515617/2016, NYSCEF Doc. No. 30 at 3). But that chronology remains markedly different from what Hazlett alleges happened to him.

tenant plaintiff on three separate instances for complete non-payment of rent, and unreasonably continued those suits, despite plaintiff or their attorney providing records showing adequate payment in each instance. No. 17 Civ. 4109 (KAM) (CLP), 2018 WL 1545687, at *1–2 (E.D.N.Y. Mar. 29, 2018). In *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, Gutman, *inter alia*, allegedly sought to restrain the plaintiff's bank account and refused to release that restraint unless the plaintiff agreed to settle the debt, despite plaintiff providing evidence that the account contained entirely uncollectable funds. No. 22 Civ. 6599 (JPO), 2025 WL 871637, at *1–4 (S.D.N.Y. Mar. 20, 2025). Finally, in *Arias*, Gutman was alleged to have restrained the plaintiff's bank account and refused to release that restraint despite bank statements showing only deposits of protected income into the account, objected to the plaintiff's exemption claim form in state court, and only agreed to release the account once reviewing the same bank statements during a court hearing. 875 F.3d at 133–34.

These allegations, while independently serious, do not demonstrate the "same or similar" conduct as alleged in this action. *Shostack*, 2015 WL 5535808, at *8; *see also Garcia*, 2026 WL 1724309, at *2. For one, *Crespo* and *Arias* centered on post-judgment conduct. Moreover, *Torres* concerned the repeated filing of actions "over the course of several years" against the same plaintiff for the same, incorrect reason, which bore no similarity to Hazlett's defense of his case.[5] 2018 WL

[5] Further, although *Torres* allowed the plaintiff in that case to proceed with his § 349 claim, the court did so in the context of deciding whether plaintiff could proceed IFP, despite being represented by counsel. 2018 WL 1545687, at *2–3. Accordingly, the court's decision that Torres had pled a

1545687, at *3. Accordingly, these actions do not, individually or together, and even when coupled with *Branch*, demonstrate that Gutman has repeatedly filed and prosecuted meritless collection actions against tenants or other debtors who were similarly situated.

Moreover, even if some of these cases did involve similar allegations of misconduct, Hazlett still has not pled the kind of widespread or broad impact on consumers at large required to make out a § 349 claim.

Courts in this Circuit finding consumer-oriented conduct in the debt collection context typically have done so where the alleged wrongful behavior targeted hundreds or thousands of individuals or was otherwise part of a systematic scheme. *See Hunter*, 2017 WL 5513636, at *8 ("Here, [p]laintiff's allegation that [defendant's] prior law firm 'had been accused of fraudulent debt collection, and further had abandoned tens of thousands of debt collection lawsuits' supports her argument that [defendant's] alleged conduct did affect or could affect a larger group of New York consumers."); *Aghaeepour*, 2015 WL 7758894, at *14–15 (upholding claim where defendants had "routinely filed allegedly fraudulent lawsuits in New York courts and obtained default judgments against various consumers," leading to instant suit by eight plaintiffs and at least four other cases involving twenty other plaintiffs, who all "complain[ed] of the same conduct"); *Shostack*, 2015 WL 5535808, at *8 (finding consumer-oriented conduct where defendant's practice of running credit checks on consumers without permission and disclosing their information to

"plausible [§ 349] claim" at that stage, rather than at the motion to dismiss stage with adversarial briefing, does not provide a reasonable parallel for Hazlett's claims to survive this motion. *Id.* at *3.

third parties was part of its "ordinary course of business" and was potentially directed toward "numerous other consumers on a daily basis," before dismissing § 349 claim on other grounds); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 692, 700–01 (S.D.N.Y. 2015) ("All told, [defendants] filed nearly 60,000 suits between 2005 and 2007."); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 419, 428–29 (S.D.N.Y. 2010) (sewer service scheme involving more than 100,000 suits between three calendar years in which "[m]ore than 90% of the individuals they sued did not appear in court; most defaulted because they were not actually served"); *Midland Funding, LLC v. Giraldo*, 39 Misc. 3d 936, 961 N.Y.S.2d 743, 747, 752 (Sup. Ct. Nassau Cnty. 2013) (debt buyer alleged to have filed "more than 3,000 cases annually" in Nassau District Court alone).

Plaintiff makes no remotely comparable allegations, nor does Gutman's participation in a small smattering of allegedly improper debt collection actions involving disparate fact patterns support a plausible inference that Gutman's conduct has a "broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund*, 623 N.Y.S.2d at 532. Accordingly, Hazlett has failed to adequately plead consumer-oriented injury on a theory of repeated deceptive acts targeting a broad group of individuals.

**2. Practice and Policy**

Nor does Plaintiff's Complaint adequately plead that Gutman engaged in a practice and policy of similarly wrongful conduct sufficient to proceed with a § 349 claim.

Hazlett's brief argues that Gutman's conduct in this case "evinces a practice and policy of filing lawsuits against consumers with no meaningful review." (Pl. Br. at 8). According to Hazlett, in filing a lawsuit against him without confirming that the building had a valid certificate of occupancy, Gutman "disregarded a check so basic" that "it likely has a practice of filing lawsuits without determining whether they have merit." (*Id.* at 9).

However, Hazlett's complaint did not plead such a practice and policy. And even if it had, the mere conclusory assertion that Guzman has such a practice and policy is woefully insufficient. *See Brake*, 504 F. Supp. 3d at 115–16 ("In her complaint, plaintiff merely alleges that defendants have engaged in 'a pattern and practice of misrepresenting the fact and amount of rental arrears to tenants and to courts.' This conclusory allegation does not nearly meet plaintiff's burden to plead that an injury or potential injury to the public might arise from defendants' conduct." (citation omitted)); *Finch*, 2020 WL 5848616, at *6 ("Plaintiff conclusorily asserts a broader 'pattern and practice of misrepresenting the fact and amount of rental arrears to tenants and to courts, and actively concealing the existence of prior payments, settlements, and court orders that affect rental arrears.' But she sets out no factual allegations to support that claim." (citation omitted)).

Indeed, rather than allege facts supporting an inference that Gutman routinely or as a matter of practice sues tenants for unpaid rent without conducting meaningful checks on whether the lawsuit has merit, Hazlett relies on speculation. He contends that "*[i]f* Gutman routinely makes no check of this," or "*if* it simply

ignores" the results of the check, then Gutman "is likely engaging in 'practices and policies' likely to affect other consumers." (Pl. Br. at 9 (emphasis added)). Such speculation does not satisfy Plaintiff's pleading burden. *See Twombly*, 550 U.S. at 555 (plaintiff's allegations "must be enough to raise a right to relief above the speculative level"); *Zappia v. Myovant Scis. Ltd.*, No. 24-253-cv, 2025 WL 338351, at *3 (2d Cir. Jan. 30, 3025) (noting that "speculation" is "insufficient to defeat a motion to dismiss").

Moreover, the lone case cited by Plaintiff in support of this theory, *White v. Fein, Such & Crane, LLP*, *supra*, is inapposite. In *White*, a putative class action, the plaintiffs alleged, *inter alia*, that the defendant law firm "routinely" charged borrowers in foreclosure actions excessive attorneys' fees and various costs it was not entitled to recover. 2015 WL 6455142, at *2. The plaintiffs further alleged that, in entering into settlement agreements with them, the defendants charged such attorneys' fees and costs "in accordance with its established practice and policies," and that "all debtors in foreclosure actions brought by defendant" were subject to the same practices and policies. *Id.* at *6. Based on those allegations, the court thus found that plaintiffs had adequately pled consumer-oriented conduct directed "at a large class of similarly situated debtors." *Id.* Hazlett does not make any comparable allegations here.

As such, Hazlett also fails to plead consumer-oriented conduct based on a theory that Gutman has a practice and policy of similarly wrongful conduct.

* * *

As one court has noted, GBL § 349 is "frequently alleged against law firms involved in debt collection, but rarely, if ever, successful. This owes in large part to the difficulty of pleading that conduct in a single lawsuit—or even a succession of lawsuits—could satisfy the 'consumer-oriented' requirement of GBL § 349." *Brake*, 504 F. Supp. 3d at 115 n.5. Hazlett's § 349 claim suffers from the same deficiency and, therefore, must suffer the same fate.

**C. Leave to Amend**

Hazlett's opposition brief requests that, should any of his claims be dismissed, he be given "an opportunity to amend his complaint as an alternative" to dismissal. (Pl. Br. at 17). Defendant does not argue, in either of its briefs, that amendment would be futile or should otherwise be denied.

The Court has discretion to grant leave to amend where "justice so requires," Fed. R. Civ. P. 15(a)(2), and "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). "Without the benefit of a ruling [on a motion to dismiss], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Here, because the Court cannot conclude that any amendment would be futile, it finds that, consistent with the usual practice, Hazlett should be given leave to replead his dismissed claims against Gutman.

## CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED IN PART and DENIED IN PART**. The Court dismisses Plaintiff's FDCPA §§ 1692d and 1692g claims, dismisses Plaintiff's GBL § 349 claim, and denies dismissal of Plaintiff's FDCPA §§ 1692f and 1692e claims. The Clerk of Court is respectfully directed to close the open motion at Docket Number 16. Plaintiff shall file an amended complaint, or a letter stating that he has decided not to file an amended complaint at this time, by no later than October 15, 2026. In the meantime, Defendant's time to answer the existing amended complaint is held in abeyance.

DATED: New York, New York
September 30, 2026

The Honorable Gary Stein
United States Magistrate Judge